Good morning. May it please the Court, my name is Gil Purcell and I represent the appellant Nikki Posh. I'd like to reserve five minutes.  Posh. All right. Thank you. Thank you for giving us. We've puzzled over that. Certainly. I'd like to reserve five minutes for a bubble if I might. Fundamentals, policy. That's what should govern the outcome of this appeal. No facts are in dispute here. I represent a lady diagnosed with lung cancer without any suggestion she had it at any point in time before. In January of 2003, she files this case, her first case, only case, for those injuries of lung cancer in 2004, timely, within one year.  Statute of limitations. California Supreme Court in Fox lays out the purposes behind the statute of limitations. It's basically a shield and not a sword as it is being used and applied here by Judge Hamilton. Judge Hamilton was wrong when she concluded that this plaintiff's physical injury claim for lung cancer was barred under the first injury rule. Statute of limitations, as it says in Fox, are basically designed to protect parties from defending stale claims. It can't be stale if it doesn't exist. The bread can't be stale if you haven't bought it yet. There's no concern here that tobacco defendants are defending a stale cancer claim. In fact, they don't even suggest, as is contrary to a lot of statute of limitations cases, that she had any inkling, let alone the actual fact of cancer, at any time prior to January of 2003. The other policy set forth in Fox stimulates plaintiffs to pursue their claims diligently. Nikki Posh could not have filed her case for lung cancer damages at any point in time before she was diagnosed with it. The undisputed record is that the majority of people who are addicted to nicotine and smoke will never get cancer. Between one and two in ten will. It's in the record. That means 90% will not. There is no testimony she could avail herself of to prove up her case. She would have been laughed out of court, to quote an earlier opinion. Would she have been laughed out of court if she proved up that she had COPD and periodontal disease? No. She could have filed for that. She didn't. That's a distinctly different disease and injury. Having no relationship, no nexus whatsoever, biologically, pathologically, in any way, shape or form to lung cancer. And it is qualitatively different, Your Honor. But it's very serious. It depends. There are degrees of serious. Your Honor, you've been diagnosed with COPD. You're going to have shortness of breath. You're going to live with it. You may have supplemental oxygen, sir, but you're not going to die from it soon. You may eventually, in your normal life expectancy, but I can't tell you as you're treating doctor, you're going to die from it. Now, contrast that with you have lung cancer. I don't need to go on about the difference in those two circumstances. Dramatically different. And Fox Court also says a countervailing factor, of course, is the policy favoring the disposition of cases on the merits rather than the procedural grounds. Can I tell you what is kind of troublesome about this case is that you have the California Supreme Court leaving open the question, which seems to hit precisely the facts of this case. Then you have these other cases, some of which have been criticized, some of which haven't. And so each side can pick and choose which of the court of appeals cases best helps them. And so at the end, may I finish? And at the end of her decision, and as Judge Hamilton says, that the court in Grisham clearly indicated it was taking no position on the central question raised in the present motion. So my question is, should this be certified to the California Supreme Court? They left for another day because, as you know better than I ever will, courts dispose of actions the first time and the first earliest issue they can. And so they said her economic claim did not bar a subsequent physical injury claim, and that's all they needed to decide. Now, in terms of your question about should this be certified to the California Supreme Court, we would urge the case not to, the court not to. As Justice Kaczynski observed in Kremen v. Cohen, certification burdens litigants, forcing them to re-argue the case in a different form, a process that is costly and full of delay, and it should be used sparingly. And this is one of those instances it should be used sparingly, because we have a dying woman. I mean, we realize that. We're left then to basically act in how we think the California Supreme Court would come out, because they haven't. They've left precisely this issue undecided. Is one of the reasons because of the particular circumstances of your client? Yes. I don't think they've left it that difficult to read the tea leaves. We have a compelling legislative history and policy dripping in that, as well as prior Supreme Court decisions from California. Well, let me follow up with Judge Prune's question and ask you this. If we are an appellate court here sitting, and if we were a California appellate court, there isn't much doubt, is there, that it would go to the California Supreme Court from the appellate court? If there was a decision, yes. If we were sitting today in an appellate court in California, either side would take it to the Supreme Court of California? Most likely, you're correct, Your Honor. Whether they would hear it is another matter. Well, of course. But so isn't that sort of parallel to what Judge McEwen was saying, that it should go to the Supreme Court of California by certification from this Court? Again, we're here early by mandamus. We appreciate that. There's urgency here. And we think these facts, if you scrutinize what you have before you, can allow you to comfortably avoid that and make a right decision predicting what this California Supreme Court will do. Okay. So which of the cases in your view point most strongly to the position that you take? Excellent. We know the issue. We know the two different sides. We know the policy arguments. And we know the cases.  So what – where are the – which of the two sides do we have to sort out? Which are the cases that you would have us look to, for instance? Coots and the concurring opinion of Justice Johnson in Miller. Please re-read both of those cases. That's a court of appeals case, the Justice Johnson case. Yes, Division 7, Second Appellate District. In Los Angeles. Yes. But that's one of the mainstays of the defense position. And he emphasizes on the facts of that case, on the facts of that case, that's the distinction he makes in that opinion. It's very persuasive. And in Coots, Your Honor, look, we say in our brief that rules developed against the relatively unsophisticated backdrops of barroom brawls and car intersections and slip and falls lose some of their relevance in these days of what we're hearing, this contraption to my right. Who would have thought, days and years ago, that we could be conducting this hearing with one of the judges in Seattle? And yet we do. Things have changed. And the first injury rule that has been looked at is a draconian rule that loses its relevance in a latency disease circumstance like this. So in Coots But what cases, what California cases, then, have rejected the first injury rule? Coots and Miller, Satcher? The concurring opinion defining what Miller really stands for, yes, sir. And in Coots, I believe, is a more extreme circumstance than Posh's. In Coots, you had a situation where the guy had blemishes and pimples on his hands, dermatitis. Later, a worsening, like the phrase is, it got real worse, but it was still it, later where he couldn't work. And the statute was not triggered by the lotion treatment on his hands, akin to And if you read Coots, it says, look, this remedy, this remedial statute, the FVLA, would be undermined if we looked at this any other way. And that's where you can see that the California legislature has spoken loudly and clearly in its civil code section 1714.45, which is exactly as remedial as the FVLA is. And Hubein. Because in that, as we quote on page 47 of our brief, it is the intention of the legislature to clarify that such claims, claims for personal injury from cigarette injuries, shall be determined on their merits without the imposition of any claim of a statutory bar or categorical defense. Tobacco is urging, in effect, a categorical defense that these are all time barred. Make no mistake. This is the issue that has to get resolved. If you don't find that Nikki Pasha's case is timely, within one year of her diagnosis of lung cancer, all individual smoker cases are time barred. Because invariably, someone has smoking, they cough from their first cigarette, they develop breathing problems, they can develop signs of COPD, they get yellow fingernails, they get gum disease well before they ever get lung cancer. You can't even get lung cancer in the first two years of smoking. And that's what she's suing for, which is a decidedly different circumstance. So if you look at the statute involved here, 1714.45, and track coots, you have exactly the situation vis-a-vis the FVLA. Was that enactment only a delusive remedy where it's thwarted, it's a legislative, humane plan intended to afford a remedy to people, and how fortuitously anomalous it would be for someone to have not had a diagnosis until after the immunity period was lifted to have a timely claim when Nikki Pasha does not. The point is that that statute is very much analogous to the FVLA in terms of its remedial features. And if you read Judge Hamilton's opinion carefully, it's a judicial comb-over of coots. She does not distinguish coots at all. That case, back in the day, in 1958, it recognized a more extreme circumstance than Posh, where you had the same injury getting worse, not triggering a statute because of the policies considered. Here we have an entirely different injury later, not triggering a statute either. Entirely consistent with coots in the Supreme Court, and entirely in harmony with the California legislative intent when they amended 1714.45 to avail this remedy to plaintiffs. So those are the cases that I would recommend the Court read, implore the Court to read, and I need to reserve three minutes. I have a complaint for rebuttal. Thank you. Thank you. Good morning, Your Honors, and may it please the Court, Daniel Collins, Munger, Tolson, Olson, on behalf of the defendant appellees in this case. As this case comes to this Court, the controlling precedent is provided by the California Intermediate Appellate Courts and by the decisions of this Court, in particular the decisions in Nodine and Solomon from this Court, and the decisions in Miller and DeRose from the California Court of Appeal. Miller and DeRose criticized the prior aberrant decisions in the Zembrano case and the Martinez-Ferrer case. And since the decisions in DeRose and in Miller, no California court of appeal has reached back to decide those issues. And the legislature, after DeRose criticized those prior cases, the legislature confronted that issue, overruled DeRose, but overruled it on its facts and with some specificity. It set very reticulated rules about how it was going to replace the single injury rule application in DeRose that it was overruling, but did it in that area with some reticulation and went no further. The California Supreme Court, in its activity in Hamilton and in Grisham, has not disturbed this general body of law. It has proceeded cautiously in Hamilton, finding it unnecessary to decide any issue because the claims there were both timely under the very generous asbestos-specific statute of limitations that the legislature had enacted. And it's not an accident that most of these cases that have been cited arise in the asbestos context, which has been addressed by the legislature and doesn't in California has not presented the problems that have arisen in other contexts. And in that context, both the California Supreme Court leaving the law as it is in place, expressly reserving the issue in Grisham where Posh appeared as an amicus and asked for the two-injury rule that she asked for from this Court, asked for it in Grisham, the Court demurred on that, finding it not necessary to reach that, noted the existing state of the law, and otherwise left things in place. The legislature, likewise, obviously is aware of the issue. You can't read DeRose and not realize that it rejected completely these two aberrant decisions, and yet the legislature, only seized of that issue, only responded in the narrow and specific way it did. And it's appropriate that it did so because the legislature is better able to decide what, in what respects the rule, the traditional rule should be rejected and what should replace it. Both of those are very difficult to do in a general sense. This is an issue that has large implications that go well beyond the context of tobacco. They extend to pharmaceuticals. They extend to malpractice actions, to a wide variety of cases. If a separate cause of action were to be recognized for each individual injury that comes up. Do you have a question? Counsel? Go ahead, Judge Blaser. When we look at Grisham and we see that they have now distinguished between economic damages and the physical damages and allow those two to be separate, looking in the tea leaves, they have reserved this specific issue. But can we analogize and think that they would take the next step? I don't think so, and I rest that primarily on what the court said on page 644 of its decision, where it chastised Philip Morris, and I'll confess I was the counsel being chastised in that case. It says, Philip Morris cites no authority, and we have found none, for the proposition that the rule that the statute of limitations commences with the infliction of appreciable injury bars suits based on a later manifesting injury of a different type. It then cites the cases that I had cited, and in describing the Miller case, which is this context, it accurately describes the holding as plaintiff cannot sue on later developed physical injuries when earlier physical injuries are appreciable. So it distinguished the precedent that we had cited on the grounds that they all dealt with injury of the same type, physical injury followed by physical injury, whereas that was not what Grisham was. It was economic injury followed by physical injury, and we didn't have any cases that had applied the single injury rule in that context. It then, against that backdrop, proceeded to analyze that issue and determine that that provided two separate causes of action. But I think that given its framing of the issue in that way, I don't think there's anything in the tea leaves in Grisham that suggests that they were subsilentio deciding the Miller issue that they put to the side. Ginsburg. Isn't there a suggestion if you go to their language where they use the phrase qualitative difference, doesn't that call into question that there may be circumstances where an injury is of a type that is qualitatively different than, say, the original injury, and that they're hinting that in that situation we'd be much in the same boat as economic and physical injury dichotomy? I don't think so. Perhaps, you know, they would have described the holding of Miller a little bit differently, and I think they accurately described it, because if you look on page 1623 of Miller, Miller essentially tried to argue that her manifestations were different injuries. Now, that argument was somewhat in tension with what her own expert had said in the case, but it says on page 1623, she also argues that the more severe and debilitating symptoms, which began in October 1985, and I'm skipping over a little, were symptoms of a different injury, a fungal infection, and the record does not compel the finding that the assertion of this latter injury constitutes splitting a cause of action. Now, in the separate concurring in the judgment opinion of Justice Johnson that the opposing counsel has referenced, he picked up on this point and said that they were the injury was just a manifestation of the same thing. So it really was not two separate injuries. It was a manifestation of the same. But he was a separate concurring in the... Would you stop right there and tell us, these are not the same disease at all. Isn't that correct? I think as the case... They are caused, both caused by smoking, but apparently cancer does not necessarily follow at all from the other disease. I think in the procedural posture that the case comes to this court, you would assume that they are separate disease processes having rooted in the same conduct. There's no question that the same wrongful conduct is at issue in both cases, but as the issue is presented to this court on the summary judgment record that we have, it comes to you on that assumption that they follow different processes. But Miller... It's quite an appealing thought that someone could decide, well, I'm not getting along too badly with my emphysema. I'm going along with my daily life and I know that litigation is costly and I just don't want to do it now. But when they get cancer, then they're into a different mode. And were we going to say to them that you had to bring it when you got emphysema? I think that the rationale that it's two separate disease processes is essentially the Miller concurrence as opposed to the Miller majority. The Miller majority nowhere rests on whether or not it was a succession of the first injury or a separate process. It simply treated that as irrelevant. It said that the first injury is the one that triggers the statute and it does not matter that the damages continue to flow and that even the substantial damages come much later. It applied that settled law and then this Court has treated in Solomon in particular the Miller case as the controlling and last word on California law. The reality is that the individual gets what may be a precursor disease, may or may not be considered separate. They're forced to sue at that point if they want to have any remedy. If they prove the disease was caused by smoking, their damages are limited to the disease at that point. Any claim of cancer would surely be speculative by most judges and you wouldn't be able to argue about that. You might get cancer, but you might not, so that's speculative. So basically, under the rule you propose, even if you had the same cause but two fundamentally separate diseases, you could never sue for the second more serious disease, is that correct? There will be cases where that is true. At the time of the first injury, it is a consequence of the first injury rule that at the time you have the first injury, the statute begins to run. You then bring your case. You prove whatever you can in terms of damages under the applicable standards for collection of damages. But as this Court said in Nodine, the fact that later damages later occur doesn't resurrect a new cause of action. And particularly though with a latent disease and the facts which are quite well known with respect to your client's product given the public hearings and the fairly prominent public discourse on this, isn't the reality is that nine times out of ten there are some preliminary signs, but the cancer doesn't show up until later? So basically, the rule you propose as a practical matter would, for all intents and purposes, cut off most plaintiffs from ever being able to sue for a cancer-related injury. I don't know that that's true. I mean, there certainly are a lot of published cases, including in California against the tobacco industry, where judgments have been paid and affirmed. So it is not the case that every case gets dismissed under this principle or that it's raised in every case. But it certainly is the case here where the first injury here is by no means trivial. COPD is a serious disease. Even plaintiff's own doctor said it can be life-threatening. So it's not in this context where it's some trivial injury that's being invoked. What's your position on certification to the California Supreme Court? On the issue of certification, both the rule in the California Supreme Court's rules require that, as a general matter, that there be no controlling authority from the California courts. And that would include from the California courts of appeal. And it's our position that that criteria really isn't satisfied. When Grisham was certified by this court, it was the court's order certifying pointed to specific recent decisions that it believed created some question as to the continued validity of certain aspects of the Solomon decision. But the – but there's nothing in any of the decisions since Nodine or Solomon or Miller or DeRose that similarly casts any doubt on the status of the rule in California. But the problem with that approach is that you have different courts of appeal in California which are not binding on each other, correct? And so the fact that one court might criticize what came out of a division or a different court doesn't tell you that that's now the state of California law. So maybe you could be a little more precise with respect to the cases that you cite and how they're controlling, if they're controlling in those same districts within California. I think Your Honor raises a fair point that I think would have some force if the dispute in the California court of appeal were more recent. But the fact is that the – Martinez-Ferrer was in 1980, and then in 1986 you had the subsequent decision in Zimbrano, and then in 87 you have the decision in DeRose and then after that the decision in Miller. And no one in the California court of appeals published decisions has gone back after DeRose and tried to resurrect Zimbrano and Martinez-Ferrer. So it isn't a live split, as it were. Even the U.S. Supreme Court sometimes waits for issues to percolate and see whether the split is real. It hasn't survived. No California court has tried to resurrect them. And the legislature, again, intervened in this area very narrowly, discreetly, inappropriately, and then otherwise left the law in place.  And I think that Solomon would be the most recent guides to this principle that we should look to. I think that that's correct, together with Miller and DeRose. And this Court generally requires in the McSweeney decision, FDIC v. McSweeney, that even with respect to issues of California law, a panel is bound by a prior panel's decision in the absence of some intervening, controlling authority that would cast doubt on the validity of that. And there is no need to do that. Kennedy. What do you think this panel is bound by? What case are you talking about? Solomon? And Nodine. The California Supreme Court rather criticized Solomon, did it not? It did, in two respects, neither of which undermined the rule here. It rejected Solomon's premise that the economic harm and the physical injury arose from the same primary right. And so to that extent, it's overruled. But it otherwise left the first injury rule applied there intact. It also did overrule a special, what it viewed as a special presumption of knowledge, of awareness of the harms and addictiveness of cigarette smoking. But that's not at issue in this case. It relates to the discovery rule. It overruled that, but otherwise left it intact. Nodine has not been called into question in any respect. And those decisions also make clear that the current state of law in the California court of appeal remains what it is. Unless the Court has any further questions, I just want to briefly, if I may, make one comment on the mandamus petition, which we've not been heard on. The Court's rules forbid us to file a response to a mandamus petition unless called for. But obviously, it can't do substitute for an appeal. Thank you. The status of the mandamus. Your Honor, in Grisham, the California Supreme Court says the addictiveness of a product is distinct from its capacity to cause serious physical injury, et cetera. That means Solomon is limited to its facts. As you say in the beginning of it, Chandler was berated by Phoebe and the gang for saying, because he couldn't quit, not because he had lung cancer. If you're going to sue for an addiction, which is what Mr. Solomon sued for, then you have to deal with when you were addicted. Nikki Posh is not sued for addiction. She's sued for lung cancer. And you distill what they're talking about to low gravy, and you're struggling with the very core of this. When does tobacco believe that a victim of cigarette-caused lung cancer can timely sue them for that lung cancer? The answer is never. And that's a direct violation and undermining of the legislative intent and Coutts. Well, wait just a minute. Let's take the COPD and the periodontal disease out of the case, and under the present Grisham law, there would be two opportunities to complain about the addiction and the lung cancer, would there not? No, because there would be a demonstration in the evidence of some adverse consequence to smoking for decades. It will be in the medical records, invariably, and it will be something argued, not in this courtroom today, but other times, that that will be sufficient injury to have started a first injury to start a statute. And this will be the same motion and the same issue, run up the flagpole again. Because the reality is, if you smoke for decades, which you need to do to increase your one in ten chance of ever getting lung cancer, you are going to have adverse effects in your medical records. And they're going to argue that that starts this draconian first injury Edsel when we are dealing with latent disease Priuses. In a world that isn't Edsels and Polaroids anymore, it's a world of latent disease, it's a world of Priuses and video hookups. And the law must recognize that and respect that. And the fact of the matter is, there is nothing contrary to the fundamental principles of all of the policies that we're looking at here to allow a victim of lung cancer, which is a not, COPD is not a precursor disease, Your Honor. It has absolutely zero to do with lung cancer. None. Entirely separate, entirely distinct. It's a separate and distinct injury. And that rule must govern in cases like this. And that's what Justice Johnson is talking about in his concurring opinion in Miller, where he says, I read Martinez-Ferrer as embodying a distinct rule. Under appropriate circumstances, posh, the occurrence of some actual and appreciable harm, COPD, periodontal disease, will not foreclose a later suit for a serious physically distinct injury, lung cancer, which first manifests itself after the limitations period has expired as to the initial harm. 91, 92, with Nicki Posh. And he goes on to say, the facts of Miller do not compel a finding. The cause of action for Miller's later developed immune dysregulation was so qualitatively or quantitatively different from the initial symptoms of asthma and allergies as to be treated as a different injury for purposes of accrual of a separate cause of action. Here we meet that test. We are what Justice Johnson and the Coots Court are embracing and envisioning, because that is the right outcome. Justice Johnson. Justice Johnson. I apologize. He didn't quite get the other two to sign on to his preposition. Okay. We appreciate your arguments. Thank both counsel for your arguments this morning. Posh v. Philip Morris is submitted and we're adjourned for the day and the week.
judges: Fletcher, McKeown, Hart